UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SIMS,<br><br>        Plaintiff,<br><br>    v.<br><br>SARA V. CENTENO,<br><br>        Defendant. | No.  1:24-cv-00433-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 29)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

## I.    INTRODUCTION

Plaintiff Robert Sims is a civil detainee at the Department of State Hospitals-Coalinga (Coalinga) and is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 6). This case proceeds on Plaintiff's claim that Defendant Sara V. Centeno—an employee at Coalinga—violated Plaintiff's Fourteenth Amendment rights by failing to protect him from a fellow patient. (ECF Nos. 7, 10, 18).

On September 10, 2025, Defendant Centano filed a motion for summary judgment, arguing that she did not violate Plaintiff's constitutional rights because she "took objectively reasonable measures to abate the risk." (ECF No. 29-1, p. 6). For the reasons set forth below, the Court will recommend that Defendant's motion for summary judgment be granted.

\\\

\\\

1

## II.      SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff filed his complaint on April 11, 2024. (ECF No. 1). Plaintiff alleges that he was attacked on May 30, 2023, by another patient at Coalinga named Gustavo Zelaya.[1] Plaintiff claims that Defendant Centeno violated his constitutional rights by failing to prevent the attack.

Plaintiff alleges that on May 23, 2023,[2] David Boot[3]—a fellow patient—observed Zelaya sharpening a weapon in the bathroom and notified Defendant. However, "she did nothing about it concerning hitting her alarm or notifying DPS at Coalinga State Hospital Police." (*Id.* at 12). Plaintiff alleges that, after Defendant was notified of this information, Zelaya cut his neck and he is "unable to speak normal[ly] from the injuries [he] sust[ained]." (*Id.* at 5).

The Court screened Plaintiff's complaint and permitted Plaintiff to proceed on his claim for failure to protect against Defendant Sara V. Centeno.  (ECF No. 7, 18).

## III.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Centano moved for summary judgment on September 10, 2025. (ECF No. 29).

In her motion, Defendant acknowledges that another patient, David Boot, told her that Zelaya was spending a lot of time in the restroom, and that Zelaya later stabbed Plaintiff in the neck with a metal object.  However, Defendant argues that she did not violate Plaintiff's constitutional rights because she acted reasonably based on the information she had to abate the risk of harm to Plaintiff. (ECF No. 29-2, p. 6). Specifically, Defendant has submitted evidence showing that she responded to Boot's information by inspecting the restroom that Zelaya had been spending a lot of time in.  She also conducted a "shakedown" of Zelaya's dorm room, and after finding nothing, "reported the suspicious activity to the following shift's lead before leaving work for the day." (*Id.* at 7). Moreover, on the same day as her search, "DSH-C police conducted a canine search of Zelaya's dorm room, and no contraband was found." (*Id.* at 3). Further, Defendant argues that she had no reason to know that Zelaya would attack Plaintiff in particular.

[1] The complaint uses the name "Guztavo Zeleya." However, Defendant indicates the correct spelling is "Gustavo Zelaya." (ECF No. 29-2, p. 1). The Court uses "Gustavo Zelaya" for consistency.
[2] As noted below, Defendant states that Boot alerted her to Zelaya's suspicious activity on May 22, 2023. (ECF No. 29-2, p. 2). And Plaintiff fails to dispute this date. Regardless, any difference as to the date is ultimately immaterial for summary judgment purposes.
[3] The complaint uses the name "David Booth." However, Defendant indicates the correct spelling is "David Boot." (ECF No. 29-2, p. 2). The Court uses "David Boot" for consistency.

(*Id.* at 8). [4]

In support of her motion for summary judgment, Defendant submits the following evidence: (1) the declaration of Genesis Morales, a Coalinga employee who helped Defendant search Zelaya's dorm room; (2) Defendant's own declaration describing the actions she took upon learning of Zelaya's suspicious activity; (3) portions of Plaintiff's deposition; (4) portions of Boot's deposition; and (5) photos of the restroom stall and weapon at issue, (6) a search log of Zelaya's dorm room, and (7) a report of the police canine search of Zelaya's dorm room. (ECF No. 29-4 to 29-6). Defendant also provided a statement of undisputed facts in support of her motion for summary judgment as required under Local Rule 260(a). (ECF No. 29-1, pp. 1-8). Additionally, Defendant has provided Plaintiff with a *Rand*[5] warning informing him what is required to oppose summary judgment under Federal Rule of Civil Procedure 56 and a summary of Local Rule 260 regarding statements of undisputed facts. (ECF No. 29-3, pp. 1-2).

After Plaintiff failed to timely oppose Defendant's motion for summary judgment, the Court issued an order granting him a single *sua sponte* extension to November 14, 2025, to do so. (ECF No. 31). Thereafter, Plaintiff filed an opposition, which he dated November 10, 2025. (ECF No. 32). In that opposition, Plaintiff states as follows:

> As ordered by the Courts to file a timely opposition, movant declares to file opposition order by the Courts to grant Plaintiff a single sua sponte extension to November 14, 2025. Plaintiff Robert Sims motions this Honorable Court to strike any and all testimony by Gustavo Zeleya, when Attorney General Julio A. Hernandez questioned, Mr. Zeleya. Gustavo extorted the Attorney General Julio A. Hernandez offering in the amount of 6000.00 to testify on Sara Centeno behalf. This was ulterior motive on Gustavo Zeleya to force the Court to pay Gustavo on demand for his testimony. This is my opposition under the scheduling order.

(ECF No. 32, pp. 1-2) (minor alterations for readability).

On December 2, 2025, Defendant filed a reply arguing that, "[b]y failing to contest any of the undisputed facts and legal argument before the court, the opposition fails to raise a genuine issue of fact, warranting granting of Defendant Centeno's motion." (ECF No. 33, p. 3).

On December 22, 2025, Plaintiff filed a document titled, in part, "Reply to the Opposition of Plaintiff Sims to Motion for Summary Judgment," which the Court construes as a surreply.

---

[4] Because the Court is recommending that Defendant be granted summary judgment, it will not address her argument that she is also entitled to qualified immunity. (ECF No. 29-2, p. 9).
[5] *See Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

(ECF No. 34) (capitalization omitted). Generally, Plaintiff argues that it is undisputed that (1) Zelaya attacked him; and (2) that Boot warned Defendant about Zelaya's suspicious activity. Plaintiff contends that Defendant should have held Zelaya "in the bathroom till DPS arrived to search Gustavo in the bathroom and would have found the manufactured weapon used to attempt to kill Robert Sims." (*Id.* at 2).[6]

## IV.    LEGAL STANDARDS

### A.  Motion for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could

---

[6] Although Plaintiff was not given leave to file a surreply, the Court has considered this filing. *See Taylor v. Carbullido*, No. 2:19-CV-2550-KJM-CKD P, 2023 WL 3168402, at *1 (E.D. Cal. Apr. 28, 2023) (noting that "[s]ur-replies are generally not permitted").

reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Failure to protect

As the Ninth Circuit has noted, the Fourteenth Amendment, as opposed to the Eighth Amendment, governs the legal standards regarding the treatment that civil detainees receive. *See Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) ("Though it purported to analyze [a civil detainee's] conditions of confinement claim under the Fourteenth Amendment, the district court actually applied the standards that govern a claim of cruel and unusual punishment under the Eighth Amendment. The court mistook the amendment that was to be applied.").

The Ninth Circuit has provided the following standards for a failure-to-protect claim brought under the Fourteenth Amendment:

> Putting these principles together, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious

5

harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" [*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)] (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also* Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) (recognizing that "reckless disregard" may be shown by an objective standard under which an individual "is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it").

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (footnote omitted); *see Hill v. Lynch*, No. 2:22-CV-0342-TLN-JDP (P), 2024 WL 4884575, at *3 (E.D. Cal. Nov. 25, 2024), *report and recommendation adopted*, 2024 WL 5125890 (E.D. Cal. Dec. 16, 2024) (applying *Castro* to claim brought by civil detainee).

## V.   UNDISPUTED FACTS

Based on the evidence presented, the Court finds that the following facts are undisputed:

The events at issue occurred at Coalinga, which "houses civil detainees who have been committed for treatment by the courts and primarily treats patients that have been committed or have been accused of committing crimes linked to their mental illness." (ECF No. 29-1, pp. 1-2). On May 22, 2023, patient David Boot visited the nurses' station where Defendant Centano, a psychiatric technician at Coalinga, was located. (*Id.* at 2-3). Defendant "spoke with Boot and another patient, Norman Bell." (*Id.* at 3). "Boot informed [Defendant] that he had observed another patient, Gustavo Zelaya, spending a lot of time in the restroom, which is a suspicious activity." (*Id.*). Thereafter, Defendant and a fellow employee, Genesis Moralas, "went to the restroom to investigate the suspicious activity." (*Id.*). "At that last toilet stall [they] noticed dust-like dark-colored debris on the ground," but "could see no obvious sources of the debris." (*Id.*).

"After discovering the debris in the restroom, Centeno concluded that a shakedown of Zelaya's dorm room and personal property was warranted," with the dorm room housing Zelaya

6

and three other patients. (*Id.* at 4). "To conduct a shakedown of any dorm room at DSH-C, the room must first be cleared of any patients, and the patients are informed that a shakedown will be conducted." (*Id.*). "Following shakedown protocols, [Defendant] informed Zelaya that his dorm room and belongings would be subject to a search." (*Id.*). Defendant, Morales, and two other Coalinga employees "conducted a thorough shakedown of Zelaya's dorm room and personal property." (*Id.*).

"The shakedown [lasted approximately twelve minutes and] began with a thorough search of Zelaya's bed, including searching underneath the mattress and through the bedsheets, and continued with a complete search of his personal property, wardrobe cabinet, and shelves." (*Id.* at 5). However, "[n]o contraband or weapons were found." (*Id.*). "After the completion of the shakedown, Centeno and Morales personally initialed the search log, confirming that a search had been completed on May 22, 2023, and no contraband was located." (*Id.*).

Later on May 22, 2023, "DSH-C police conducted a canine search of Zelaya's dorm room, and no contraband was found." (*Id.* at 6). "At the end of her shift, on May 22, 2023, Centeno informed the incoming shift lead of the reports of the suspicious activity, and she did not return to DSH-C until after May 30, 2023." (*Id.*).

"On May 30, 2023, [P]laintiff Sims was sitting in a day room at DSH-Coalinga eating breakfast, when Zelaya came from behind and stabbed Sims in the neck with a metal object with a black handle." (*Id.*).

Prior to the attacked, "Sims and Zelaya had exchanged pleasantries." (*Id.*). "At no time prior to the attack did Boot have a discussion with Sims about Zelaya's suspicious activity." (*Id.* at 7). "At no time prior to the attack was Centeno informed, . . . [that] Plaintiff was being targeted by Zelaya or posed a threat to Plaintiff." (*Id.*).

## VI.    ANALYSIS

After reviewing the evidence presented, the Court recommends finding that Defendant has met her initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. That evidence shows that Defendant Centeno took reasonable measures to abate the risk posed to Plaintiff by Zelaya's suspicious activity, namely, "she initiated a search of the restroom where the suspicious activity occurred, determined that a shakedown of Zelaya's dorm-

room and personal property for contraband was warranted, and informed the incoming shift lead that there was a report of Zelaya's suspicious activity." (ECF No. 29-2, p. 6).

Moreover, there is nothing to indicate that Defendant made an intentional decision with respect to the conditions under which Plaintiff was confined that put Plaintiff at substantial risk of suffering serious harm. Nothing in the record shows that Defendant possessed any information indicating that Zelaya would attack Plaintiff, or that Defendant Centano failed to take reasonable measures to abate the risk that Zelaya posed.

In light of the extensive record establishing that Defendant did not fail to protect Plaintiff under the relevant Fourteenth Amendment standards, the burden shifts to Plaintiff to demonstrate a genuine issue of material fact for trial. However, Plaintiff has offered no evidence in opposition to Defendant's evidence, nor has he disputed any of the facts in Defendant's statement of undisputed facts.

Rather, Plaintiff's opposition argues only that the Court should strike Zelaya's testimony. (ECF No. 32, p. 2). However, Defendant Centeno has not offered any testimony from Zelaya in support of her motion for summary judgment.[7] (ECF No. 33, p. 6).

In his surreply, Plaintiff argues that that it is undisputed that (1) Zelaya attacked him; and (2) that Boot warned Defendant about Zelaya's suspicious activity. (ECF No. 34, p. 2). However, these facts alone fail to show that Defendant Centeno violated Plaintiff's constitutional rights. Plaintiff also argues that Defendant should have held Zelaya "in the bathroom till DPS arrived to search Gustavo in the bathroom and would have found the manufactured weapon used to attempt to kill Robert Sims." (*Id.* at 2). However, Plaintiff does not submit any evidence to support this statement. On the contrary, Defendant's evidence indicates that the restroom was empty when Defendant searched the stall. (ECF No. 29-1, p. 3). Regardless, even if Zelaya were still in the restroom during the search, Plaintiff fails to provide any evidence that Defendant's response was objectively unreasonable.

Accordingly, because Plaintiff has failed to come forth with evidence from which a jury could reasonably render a verdict in his favor, the Court will recommend that Defendant's motion

---

[7] Defendant explains that defense counsel attempted to depose Zelaya on June 26, 2025; however, he demanded money to testify. (ECF No. 33, p. 6). Defense counsel refused the demand for payment, Zelaya refused to testify, and the deposition did not take place. (*Id.*).

for summary judgment be granted and this case be dismissed.

## VII.    CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS RECOMMENDED that

1.  Defendant Centeno's motion for summary judgment (ECF No. 29) be granted,

2.  Judgment be entered in Defendant Centeno's favor, and

3.  The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 21, 2026**                    /s/ Erica P. Grosjean
                                                   UNITED STATES MAGISTRATE JUDGE